K. & H. Realty Corporation v. Commissioner.
K. & H. Realty Corp. v. Commissioner
Docket No. 51745.
United States Tax Court
T.C. Memo 1956-107; 1956 Tax Ct. Memo LEXIS 197; 15 T.C.M. (CCH) 534; T.C.M. (RIA) 56107; April 30, 1956
*197 Edward J. Greenspan, Esq., for the petitioner. Frank V. Moran, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax in the amount of $3,934.46 for the taxable year 1950. The sole issue is whether the amount of $18,000, claimed by petitioner as a deduction for compensation of officers was, in reality, compensation for services and therefore an ordinary and necessary business expense, or was, in realty, a distribution of profits. Findings of Fact The petitioner, hereinafter sometimes called the corporation, is a corporation having its offices in Holyoke, Massachusetts. Its tax return for the calendar year 1950 was filed with the collector of internal revenue for the district of Massachusetts. Samuel Halpern and Hyman Kramer were the only officers of the corporation. Halpern owned 450 shares of the 900 shares of capital stock issued, and Kramer owned 449 shares. The remaining share of stock was owned by Kramer's daughter. During the years 1942 through 1949, with the exception of 1948, no salary or other compensation was paid to either of the two officers. During this period the officers *198 regularly rendered services to the corporation as needed, and the corporation received substantial benefits therefrom. The officers devoted a substantial part of their time to the management of the affairs of the corporation during the years 1937 through 1948 when it was an operating corporation. The following table shows a financial history of the corporation: Officers'
Recognized
Compen-
Capital
Other
Net
December 31
Year
sation
Gain
Income
Income
Cash Balance
1937
$ 1,200.00
$ 12,317.40
$ (106.90)
none
1938
1,000.00
15,291.86
(52.21)
207.88
1939
2,810.00
16,511.13
(225.18)
573.02
1940
3,800.00
22,040.66
(136.89)
122.41
1941
6,000.00
1,132.87
29,907.71
302.22
none
1942
none
36,275.05
1,973.10
none
1943
none
1,332.85
40,792.53
8,893.07
none
1944
none
1,575.00
45,268.05
13,610.10
1,602.45
1945
none
10,030.85
58,709.54
19,040.72
none
1946
none
34,781.58
54,005.84
51,385.40
none
1947
none
35,029.17
50,621.54
94,124.54
6,590.45
1948
7,040.00
3,551.22
50,536.37
8,132.88
100.00
1949
none
6,775.42
6,394.15
6,105.19
660.46
1950
18,000.00
15,559.10
5,082.13
(293.65)
3,413.57
$39,850.00
$159,768.06
$443,753.96
$202,752.39
$13,270.24
*199 The business of the corporation prior to 1949 was buying, repairing, leasing and selling real estate. In 1948 the properties held for sale or for leasing were transferred to other corporations owned by Halpern and Kramer, but the petitioner retained certain purchase money mortgages received by it in connection with prior sales of real estate. In the taxable year petitioner maintained an office, and Kramer and Halpern each devoted at least three days a month in collecting the payments of principal and interest due on the fifteen mortgages which petitioner then held, the payment of taxes and the supervision of the mortgaged property for the purpose of seeing that it was kept in proper repair and was properly insured. During the years prior to 1949, Aelpern and Kramer devoted much more time and attention to the business of the petitioner. They selected the properties which it bought, decided upon and negotiated the sales made, negotiated leases, collected the rents and installments of purchase prices due, supervised the making of necessary repairs, handled all of the financial affairs of petitioner including the purchase of proper insurance coverage, and at times personally advanced *200 money to petitioner without interest and guaranteed the repayment of money borrowed by petitioner. During all of the years Kramer and Halpern contributed equally their services to petitioner corporation. They received no direct compensation for these services except the salaries paid to them by petitioner. During the years prior to 1949, it was the policy of petitioner, dictated by its two officers and stockholders, Kramer and Halpern, to reinvest all available funds in profit and income-producing assets. Consequently, no dividends had been distributed by petitioner, and during many of those years no salaries were paid to Halpern and Kramer. The corporate affairs of petitioner were conducted with the greatest informality. There were no recorded meetings of directors or stockholders. Decisions relating to the conduct of petitioner's affairs were made orally by Halpern and Kramer meeting in informal conferences. In 1950, due to the curtailment of its business by reason of its transfer of assets to other corporations, the petitioner was confronted with the problem whether the proceeds of the mortgages held by it and collected during 1950 should be reinvested or should be paid to *201 Halpern and Kramer. The two individuals discussed this problem informally in 1950 and "decided to draw a salary, because [they] hadn't drawn very much salary in the prior years." No written corporate record was made of this decision. During 1950 the petitioner made payments of $9,000 to each of the individuals which were entered on the books of petitioner as follows: Notes Payable
12/28/49
Hyman Kramer
J 9
$ 500
Samuel Halpern
J10
500
1/23/50
Samuel Halpern
J11
2,000
Hyman Kramer
J11
2,000
2/28/50
Samuel Halpern
J12
7,500
Hyman Kramer
J12
7,500
8/18/50
Hyman Kramer
J15
4,000
8/21/50
Samuel Halpern
J15
4,000
1/ 6/49
Kramer & Halpern
J 1
$10,000
12/31/50
P & L
J17
18,000
$28,000 As part of the closing entries of the petitioner's books the payment of $18,000 to Halpern and Kramer was credited to "management fees." The petitioner did not maintain an account entitled "management fees" in 1950. At the time the payments were made to Kramer and Halpern in 1950, the corporation did not withhold any amount from such payments for withholding taxes or for Federal Insurance Contributions Act taxes. On December 13, 1950, Kramer *202 and Halpern each made payments to the corporation of $1,395, $1,350 representing withholding taxes and $45 representing Federal Insurance Contributions Act taxes on the $9,000 payments. The corporation claimed a deduction on its income tax return for 1950 for compensation of officers in the following amounts: Hyman Kramer
$9,000
Samuel Halpern
9,000 The Commissioner disallowed this deduction for compensation of officers in the amount of $18,000 "for the reason that the alleged salaries are not ordinary and necessary expenses paid or incurred during the taxable year as required by section 23(a)(1)(A) of the Internal Revenue Code." The payments in question constituted reasonable salaries paid by petitioner for personal services actually rendered. Opinion KERN, Judge: Respondent's principal contention in this case is that no part of the $9,000 paid by petitioner to each of its officers in the taxable year was paid or received as compensation for services rendered either in the taxable year or in prior years, but that, to the contrary, the payment of the $18,000 constituted a non-deductible distribution of corporate profits made to Kramer *203 and Halpern as stockholders of petitioner corporation. This contention is consistent with his determination of deficiency which disallowed the deduction of the $18,000 in its entirety. Respondent, in support of this contention, points out that no corporate minutes of a meeting of petitioner's board of directors authorized the payment of salaries as compensation for either present or past services, that no distributions of profits by way of dividends had ever been made by petitioner to its stockholders, that the payments of $9,000 to each of the officers were directly proportionate to their stock ownership, that at the time the payments were made to its officers, petitioner did not make withholdings on account of Federal income taxes or Federal Insurance Contribution taxes, and that the ambiguous manner in which these payments were recorded on petitioner's books was more appropriate for the recording of distributions of profits than of payments of compensation. This argument appears impressive until it is taken apart and each proposition in it is analyzed. While our problem would be much simpler if formal corporate minutes had been made authorizing and characterizing the payments *204 in question, their absence is not so unusual in the case of a corporation which has, in reality, only two stockholders and two officers as to cause a presumption one way or the other on the problem before us. In fact, considering the lack of formality in petitioner's corporate records, the sudden emergence of formal written minutes of a meeting of petitioner's board of directors in the taxable year authorizing the payment of salaries might be suspected as manufactured self-serving testimony. In any event, we would not be bound by it but could properly look to all the facts and circumstances in order to determine the character of the payments in question. In the absence of such minutes we can do the same. It is true that the record herein does not disclose that petitioner has paid dividends. However, the record suggests that petitioner in the latter part of 1948 distributed half of its operating assets to a corporation owned by Halpern and half to a corporation owned by Kramer. It may be that a distribution of most of its earnings accumulated over prior years occurred in this way. However, the record does show that in six of the thirteen years of petitioner's existence prior to the *205 taxable year, petitioner had paid salaries to its officers. Therefore, it may be said that petitioner had something of a policy of paying salaries to its officers but no policy of paying dividends to stockholders. Consequently, this argument of respondent weakens rather than strengthens his case. It is also true, as respondent properly points out, that since Kramer and Halpern were equal stockholders of petitioner, the payment of $9,000 to each of them was proportionate to their stock ownership. However, it is also true that, according to undisputed testimony in the record, both Kramer and Halpern rendered services of equal value to petitioner. Therefore, if they were to be equitably compensated for such services, it would be necessary for each to receive the same compensation. Where two sole stockholders of a corporation are also the two sole officers of the corporation and both perform services of the same value to the corporation, the fact that payments are made to them by the corporation in equal amounts can not be of any probative value in considering whether the payments constituted compensation for services or dividends. While no withholdings on account of taxes appear to *206 have been made by petitioner concurrent with the payments made to Kramer and Halpern, the latter did pay to the corporation on December 13th of the taxable year considerable sums in amounts representing the taxes which were to be withheld from salaries paid. This indicates that during the taxable year, at least on December 13th, Halpern, Kramer and petitioner all considered that the payments constituted salary. Respondent also points out the ambiguous manner in which the payments to Halpern and Kramer were recorded on petitioner's books. We recognize some ambiguity in this treatment but do not agree with respondent that it is inconsistent with considering these payments as compensation for services rather than dividends. We have carefully considered respondent's argument on this point as a whole and part by part. Nevertheless, and in spite of a record which is far from satisfactory, we have concluded that the payments in question constituted compensation for services. Petitioner depended for its financial success entirely on the services of Kramer and Halpern. Due to these services it had realized during the period 1937 to 1950 recognized capital gains in the amount of $159,768.06, *207 other income of $443,753.96, and had net income in the amount of $202,752.39. During seven of the thirteen years of its existence (all but one of the eight years prior to 1950) petitioner had paid no salaries to its two officers, yet during those seven years petitioner had realized recognized capital gain in the amount of $139,524.87, received other income in the amount of $292,066.70 and had had net income in the amount of $195,132.12. The services of Kramer and Halpern rendered to petitioner during these years have been described in our findings. They were not only substantial but were also most profitable to petitioner. Before the distribution of net earnings to Halpern and Kramer as stockholders it was appropriate for petitioner to compensate them for their services by way of salary. Petitioner had paid salaries in the past but not for seven or eight years prior to 1950. The average of salaries paid them for the six years during which they received salaries was approximately $3,600 or $1,800 for each. Halpern's testimony which we have quoted in our findings indicates, in our opinion, that he and Kramer who controlled the corporation intended that the payment of $18,000 to them *208 in 1950 was to be compensation to them for uncompensated services rendered by them to petitioner in prior years. If salaries had been paid to them for such prior years in amounts equivalent to the average salaries which they did receive, the amount of the payment to them in 1950 would have been approximately $25,000 without making any provision for the compensation for their services rendered in 1950. There is testimony in the record to the effect that a similar corporation paid its two officers total salaries of $6,000 a year. In our opinion, the payments in question constituted compensation in 1950 for present and past personal services actually rendered to petitioner by its two officers, they were reasonable in amount and were properly deductible by petitioner in the taxable year. Decision will be entered for petitioner.